FILED

August 4, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 7:15 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT JACKSON

| | | |
|---|---|---|
| SARAH LOVE,<br>    Employee,<br>v.<br>DELTA FAUCET,<br>    Employer,<br>And,<br><br>TRAVELERS INSURANCE CO.,<br>    Insurance Carrier. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No.: 2015-07-0195<br><br>State File Number: 55816-2015<br><br>Judge Allen Phillips |

## EXPEDITED HEARING ORDER FOR MEDICAL AND TEMPORARY DISABILITY BENEFITS

This matter came before the undersigned Workers' Compensation Judge on July 7, 2016, upon the Request for Expedited Hearing filed by Sarah Love pursuant to Tennessee Code Annotated section 50-6-239(2015). Ms. Love seeks medical and temporary disability benefits for an alleged shoulder injury. Delta contends she has failed to establish causation. Accordingly, the central legal issue is whether Ms. Love has established, by the standard applicable at an Expedited Hearing, that she suffered an injury arising primarily out of and in the course and scope of her employment. If the answer is in the affirmative, the issue turns to the extent of her entitlement to medical and/or temporary disability benefits. For the reasons set forth below, the Court holds Ms. Love has come forward with sufficient evidence, at this time, to show she is likely to prevail in establishing an injury arising primarily out of and in the course and scope her employment. Thus, she is entitled to medical and temporary disability benefits.[1]

## History of Claim

Ms. Love is a forty-eight-year-old resident of Madison County, Tennessee who

---

[1] The Court has attached a complete listing of the technical record and exhibits admitted at the Expedited Hearing to this Order as an appendix.

worked for Delta in production. On July 17, 2015, she felt a "pop" in her right shoulder when lifting a tub of parts. She reported her injury and Delta provided a panel of physicians. She chose Dr. Greg Wolf, an orthopedic surgeon in Memphis.

After noting Ms. Love's report of injury during his first visit with her on August 11, 2015, Dr. Wolf suspected a rotator cuff tear and recommended an MRI. He restricted her to light duty with "no use of the right upper extremity." (Ex. 1 at 13).

On September 15, 2015, Dr. Wolf recorded that the MRI revealed a rotator cuff tear and a complete rupture of the biceps tendon. He discussed with Ms. Love that "she would likely benefit from a rotator cuff repair" and further discussed a possible repair of the biceps tendon if the tear appeared "new" when examined during surgery. (Ex. 1 at 11). Ms. Love "wish[ed] to proceed with surgery" and Dr. Wolf maintained the restriction of no use of the right upper extremity. *Id.*

On September 25, 2015, Dr. Wolf responded to an inquiry from Delta regarding the cause of Ms. Love's injury. He responded in the affirmative to the question: "Please provide your expert medical opinion, to a reasonable degree of medical certainty, as to whether Ms. Love's diagnosis and the need for treatment arises primarily out of and in the course and scope of employment with Delta Faucet?" (Ex. 1 at 10). He attributed "100%" of the "diagnosis and need for treatment" to the injury at Delta. *Id.*

Two weeks later, on October 5, 2015, Delta's counsel corresponded with Dr. Wolf via a three-plus page, single-spaced letter detailing what it described as right shoulder pain that "began long, *long* before July 17, 2015." (Ex. 6 at 3)(Emphasis in original). After detailing extensive right shoulder complaints Ms. Love made to Dr. Louis Murphy, her personal physician, counsel asked Dr. Wolf to "re-visit" his previous causation opinion, "this time armed with a complete medical history." So armed, counsel "assumed" Dr. Wolf would change his "previous causation opinion." *Id.* Indeed, Dr. Wolf checked an "Agree" box beside a paragraph stating that he, "*cannot say*, within a reasonable degree of medical certainty that Ms. Love's shoulder problems were related to her work at Delta." (Ex. 1 at 9)(Emphasis added). Delta then denied Ms. Love's claim.

On January 12, 2016, Dr. Wolf noted Delta's denial but then reversed his last opinion by stating, "[t]o me, it seems like a fairly clear-cut case in that she was lifting a heavy tray of parts and felt a pop in her shoulder and had pain." He added the objective findings on the MRI of rotator cuff and biceps tendon tears. (Ex. 1 at 5). He thought it "smartest" to await results of her appeal "through the Tennessee Labor Board" before proceeding to surgery under her private insurance. *Id.*

On March 25, 2016, Dr. Wolf realized he based his "clear-cut" comment of January 12, 2016, on his "clinic notes" without reference to his response to Delta "placed in a "separate portion of [Ms. Love's] medical record." (Ex. 1 at 3). Upon reflection, he

again reversed himself by stating, "it [was] reasonable to maintain [his] opinion that [he could not] say within a reasonable degree of medical certainty that Sarah Love's shoulder problems" were "primarily caused" by her work at Delta. *Id.* He noted he would "discuss" this opinion with Ms. Love at her next appointment.

At that next appointment, on April 21, 2016, Dr. Wolf, "after some consideration and further discussion with Ms. Love," decided to "reverse [himself] once again regarding her injury." (Ex. 1 at 1). In so doing, he noted the "majority" of Ms. Love's complaints detailed in Delta's letter "are from the late 1990's, ending in 1998 which was 16 years ago." *Id.* Ms. Love "then continued on for 13 years" until again complaining of pain "on 10/25/11." *Id.* In readopting his affirmative causation opinion, Dr. Wolf explained:

> Given the fact that there was no objective evidence of a rotator cuff tear in any of her previous medical documentation, given the fact that Ms. Love was tolerating her regular work prior to her workman's compensation claim and given the fact that she felt a pop when the shoulder pain started when she was lifting a tray, I do think it is reasonable to say Ms. Love's injury is the result of her work.

*Id.* at 1-2. He "regretted" his reversal "confuses this issue for all parties involved." *Id.* at 2.

After Dr. Wolf reverted to his affirmative causation opinion, Delta sought an opinion from Dr. David Sickle. It did so with a four-plus page letter from its counsel similar to the one he sent Dr. Wolf on October 5, 2015. In his letter to Dr, Sickle, counsel pointed to the records of Ms. Love's personal physician, Dr. Wolf's reversals of opinion, and asserted Dr. Wolf "erred in changing his opinion the last time, as [counsel believed Dr. Wolf] based his change of mind on an erroneous reading of Ms. Love's medical records." (Ex. 7 at 4). This erroneous reading centered upon, in counsel's description, Ms. Love's untruthful statements to Dr. Wolf; namely, she concealed the fact her shoulder problems "began long, *long* before July 17, 2015." *Id.* (Emphasis in original).

At the end of Delta's letter, Dr. Sickle checked the "Agree" box beside this statement: "Based on her medical history, Ms. Love has long-standing issues with her shoulder. Therefore, I cannot say, within a reasonable degree of medical certainty, that Sarah Love's shoulder problems were primarily caused by her work at Delta Faucet." (Ex. 7 at 5). Afterwards, Delta maintained its denial.

The parties did not resolve their disputes through mediation and Ms. Love requested this Expedited Hearing. At the hearing, Ms. Love was the only witness to testify. She claimed that since beginning work at Delta five years ago, she had no disciplinary issues and maintained "perfect" attendance. She admitted to past shoulder

pain on direct examination.

After describing her injury and medical care, she underwent approximately forty-five minutes of cross-examination regarding previous issues with her right shoulder and statements she made after her alleged injury. Specifically, Delta questioned Ms. Love regarding the care she received from Dr. Murphy. Delta offered into evidence the records of every visit Ms. Love made to Dr. Murphy, for her shoulder or otherwise, from 1996 to 2014. (Ex. 8). Quoting from these records, Delta questioned Ms. Love regarding repeated complaints of pain and problems with her shoulder, including injuries at previous employers and visits to emergency rooms. For her part, Ms. Love claimed she told Dr. Murphy of pain in her "arm," pointing to an area on the back of her arm above the elbow. She denied any shoulder "injury" prior to Delta.

Further, Delta confronted Ms. Love with an injury report completed after the July 15, 2015 incident wherein she checked "no" to the question "have you been treated for this problem before?" (Ex. 4). Delta pointed out that, at her first visit to Dr. Wolf, she claimed only "high blood pressure" as a pre-existing health problem. (Ex. 5). Finally, Delta questioned Ms. Love as to why she purportedly "revoked" a medical authorization allowing Delta to obtain Dr. Murphy's records. (Ex. 9). Ms. Love maintained she had not had prior shoulder injuries and denied revoking any authorizations.

## Findings of Fact and Conclusions of Law

### Standard applied

At this Expedited Hearing, Ms. Love need not prove every element of her claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, she must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1)(2015).

### Causation

Upon careful review of the evidence, the Court finds Ms. Love is likely to prevail at a hearing on the merits regarding causation. Contrary to Delta's argument, Ms. Love is not required to prove her injury primarily arose out of her employment by a *preponderance of the evidence* at this Expedited Hearing. Rather, she is entitled to "some relief" at this Expedited Hearing so long as she produces evidence of an injury by accident that arose primarily out of and in the course and scope of employment. *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at * 6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). The Court concludes she has produced such evidence.

4

The Court begins its analysis against the backdrop of the definition of an "injury" under law. Namely, a compensable injury must result from a "specific incident, or set of incidents, arising primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A)(2015). An injury "arises primarily out of and in the course and scope of employment" only if it contributed more than fifty percent in causing the injury, considering all causes. An injury must, to a reasonable degree of medical certainty, contribute more than fifty percent in causing the disablement or need for medical treatment, considering all causes. Tenn. Code Ann. § 50-6-102(14)(B) and (C)(2015). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility and the authorized physician "shall be presumed correct on the issue of causation," subject to rebuttable by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E) (2015).

### Specific incident

Taking these requirements in turn, the Court finds Ms. Love established that an "incident" occurred on July 17, 2015. She testified to lifting a tray of parts, feeling a "pop" in her shoulder, and that she reported the event to her supervisor. Delta offered no proof to the contrary. Hence, Ms. Love established the first required element of a compensable injury; namely, that it was "caused by a specific incident, or set of incidents." Tenn. Code Ann. § 50-6-102(14)(A)(2015).

### Arising primarily out of employment

The next requirement, whether Ms. Love's injury arose primarily out of her employment, is the crux of the case. On this point, the Court also finds Ms. Love established, under the standard applicable at this Expedited Hearing, an injury primarily arising out of her employment.

### a) Parties' positions

Looking first to the facts, Ms. Love argued she never had a significant injury, never had surgery, and had never been recommended to have an MRI before the incident of July 17, 2015. Moreover, she asserts much of Delta's argument is irrelevant because, even after Delta "brought out allegedly false statements" regarding her history, Dr. Wolf still related her injury to the work at Delta. Because he is the approved physician, Dr. Wolf is presumed correct on the issue of causation and he attributed "100%" of the injury to the work at Delta before being presented with the "minor problems" of which she complained in the past. Conversely, Ms. Love points out that Dr. Sickle never saw her and contends the Court should accord his opinion "little weight." Regardless, Ms. Love contends Dr. Sickle's statement that he "cannot say" her injury is related to her employment is much different from him saying the injury is "not related."

5

On the other hand, Delta contended Ms. Love's claim must fail because both her expert medical and lay evidence lacked credibility. First, Delta argued Dr. Wolf lacked credibility because he gave "five different opinions" regarding causation. He switched between answering affirmatively and negatively until finally rendering a flawed opinion based on Ms. Love's "false and misleading history."

However, Delta reserved its most vigorous arguments for Ms. Love. Namely, though it confronted her with "10-15" visits to her personal physician regarding her shoulder, "under oath, [she] tells the Court her only injury was at Delta and that she never had problems before 2015." Through "one prevarication after another," Ms. Love attempted to "hide…an almost twenty year history of treatment for her shoulder not only from Delta, but also from the Court." In summary, Delta was, in the words of counsel, "quite frankly astounded that [Ms. Love] would come in here today and put on testimony that is absolutely false and 180° from what every document that has been entered says."

### b) Relevance of prior shoulder complaints

Because the parties focused heavily on the point, the Court will first address the relevance of Ms. Love's prior shoulder issues, if any, to her current claim for benefits. In so doing, the Court reviewed all 467 pages of Dr. Murphy's records. It finds the first mention of Ms. Love's right shoulder on page 168 when she, on September 3, 1996, complained of shoulder pain with no history of injury. (Ex. 8 at 168). Approximately six months later, in April 1997, and then one year later in March 1998, she again complained of pain with no history of injury. In September 1998, Ms. Love mentioned an injury at work "about a year ago" causing her to go on light duty off & on when it flares up." *Id.* at 170. In October 1998, there was mention of a work injury at "Humko." *Id.* From that point forward, the Court notes several more mentions of shoulder pain including visits to Humboldt General Hospital emergency room. In addition, the Court notes the description of "arm" pain in the hand, elbow, and upper arm area. These periodic complaints continued through 2014.

Dr. Wolf, when commenting on the prior records at his last visit, stated, "[t]he fact is that the majority of her complaints [regarding her shoulder] are from the late 1990's, ending in 1998 which was 16 years ago." (Ex. 1 at 1). Further, there was "no reference to any objective study that would indicate Ms. Love had a rotator cuff tear as it does not appear she was ever worked up with an MRI." *Id.* Moreover, Dr. Wolf noted Ms. Love was working prior to her lifting the tray on July 17, 2015, when she felt a pop in her shoulder.

The Court finds Dr. Wolf's explanation convincing. Conspicuously absent from any of the prior medical records, from *any* time in the past, is a diagnosis of a rotator cuff tear or biceps tendon rupture, a record of an MRI demonstrating such conditions, or any

6

indication of Dr. Murphy restricting Ms. Love from work. While Ms. Love may have complained of shoulder pain in the more recent past than that described by Dr. Wolf, the uncontroverted proof is that Ms. Love worked in production at Delta with "perfect attendance" for five years before her injury. She described her job as "fast" and "repetitive," with her handling 140 faucets per hour and being required to lift and load parts. The Court finds such consistent job performance is inconsistent with an individual with a serious issue in her shoulder. For its part, Delta did not question the event but instead recognized it was of such urgency to provide a panel of orthopedic specialists at the outset. Given the facts as presented, and regardless of Ms. Love's less than ideal memory, the Court finds the evidence of prior shoulder issues does not in and of itself preponderate against a finding that Ms. Love sustained an injury at Delta.

### c) Medical opinions regarding causation

After one visit, Dr. Wolf opined that "100%" of Ms. Love's need for treatment was related to her injury at Delta. (Ex. 1 at 10). This meets the requirement that a compensable injury must, to a reasonable degree of medical certainty, contribute greater than 50% to the disablement or need for medical treatment. Further, there is no doubt Dr. Wolf considered all "causes" as required by the statutory definition of reasonable degree of medical certainty; Delta detailed them in exquisite detail in its letter to him. He specifically noted his consideration of those other potential causes in his record of April 21, 2016.

The Court rejects Delta's premise that Dr. Wolf is less than credible because of his reversals of opinion. His initial thought was that Ms. Love suffered a shoulder injury based upon her history and his last thought was that she suffered a shoulder injury based upon her history. His departure from these affirmative opinions occurred once when he replied to Delta's correspondence of October 5, 2015, which led him to the conclusion intended by the author and again when he reconsidered the correspondence that was kept in a separate portion of his file on March 25, 2016. These two departures from an affirmative opinion do not counteract his April 21, 2016 explanation of why he believes the injury is related, namely his consideration of Ms. Love's current and past history juxtaposed against her current diagnoses.

The Court also considered the opinion of Dr. Sickle. In so doing, it recognizes Ms. Love raises an important point: Dr. Sickle did not say Ms. Love's shoulder problems were not primarily caused by her work at Delta. Instead, he stated he could not say they were so caused based upon her "longstanding issues with her shoulder." (Ex. 7 at 5).

Like its letter to Dr. Wolf, Delta's presentation to Dr. Sickle begged a negative answer to its causation question. Though, Delta provided Dr. Sickle with Dr. Wolf's records, it then steered him towards the answer it desired by stating, "we know that Ms. Love did not simply 'feel a pop in her right shoulder' on July 17, 2015, and 'have pain

7

since that time'." (citing the history given Dr. Wolf at the first visit). Delta omitted from this immediate prelude to its causation question that it never questioned Ms. Love's reporting of an injury, that she had worked without complaint for several years and, that the prior records reflected no prior diagnosis of the anatomic lesions at issue. Instead, the entire lead-up to the causation question focused on Ms. Love's purported concealments and Dr. Wolf's purported "erroneous reading of Ms. Love's medical records."

Our Appeals Board instructs that a trial court generally has the discretion to choose which expert to accredit when there is a conflict of expert opinions. *Brees v. Escape Day Spa & Salon*, No. 2014-06-0072, 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at *14 (Tenn. Workers' Comp. App. Bd. Mar. 12, 2015). Our Supreme Court has noted that a trial court may determine, "the opinion of certain experts should be accepted over that of other experts [when] it contains the more probable explanation." *Thomas v. Aetna Life and Cas. Co.*, 812 S.W.2d 278, 283 (Tenn.1991). In evaluating conflicting expert testimony, a trial court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991).

This Court determines Dr. Wolf offers the more probable explanation of Ms. Love's shoulder injury. Notably, he saw Ms. Love on five occasions whereas Dr. Sickle merely reviewed records. It stands to reason that the physician having the most contact with an injured worker has the advantage to render a more in-depth and more accurate opinion. *Orman,* 803 S.W.2d at 677. More importantly, Dr. Wolf's opinion comports with the factual chronology established in the evidence. Ms. Love had pain in her shoulder for years but Dr. Murphy never diagnosed the anatomic lesions at issue, did not restrict her from work, or refer her to an orthopedic specialist. She worked for five years at Delta with perfect attendance until sustaining an incident prompting orthopedic care concomitantly resulting for the first time in a recommendation for surgery and in disablement.

Accordingly, at this Expedited Hearing stage of the case, Ms. Love has come forward with sufficient evidence from which the Court finds she would likely prevail at a hearing on the merits. However, the parties should not construe this order in any way as to relieve Ms. Love from her burden of proof at a Compensation Hearing or in any way that would prevent Delta from presenting evidence regarding its position on the medical opinions to date.

*Medical benefits*

Having found adequate proof of causation, the Court finds Ms. Love is entitled to medical treatment in accordance with Tennessee Code Annotated section 50-6-204 (2015). Delta shall pay for Ms. Love's past and continuing medical expenses made reasonably necessary by the injury of July 15, 2015. Dr. Wolf shall remain the authorized treating physician.

*Temporary disability benefits*

Ms. Love presented no evidence that she was totally disabled from working at any time. Instead, the medical evidence reveals Ms. Love was placed on restrictions by Dr. Wolf at the first visit of August 11, 2015, and again on September 15, 2015. Ms. Love testified she labored under these restrictions until Delta ceased accommodating her as of November 30, 2015, and that she has not worked since. Delta presented no evidence to the contrary.

Hence, the Court finds Ms. Love is entitled to temporary partial disability benefits. As our Appeals Board explained in *Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at 7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015), "in circumstances where the treating physician has released the injured worker to return to work with restrictions prior to maximum medical improvement, and the employer either (1) cannot return the employee to work within the restrictions or (2) cannot provide restricted work for a sufficient number of hours and/or at a rate of pay equal to or greater than the employee's average weekly wage on the date of injury, the injured worker may be eligible for temporary partial disability." *Id.* at 7-8.

Pursuant to Tennessee Code Annotated section 50-6-207(2)(B), temporary partial disability is calculated as two-thirds of the difference between the worker's average weekly wage and the wage the worker is able to earn in her disabled condition. Here, Ms. Love's average weekly wage is $606.15 according to the wage statement. (Ex. 2). The only proof as to Ms. Love's earning capacity in her disabled condition is her testimony that Delta ceased accommodating her restrictions as of November 30, 2015, and that she has not worked since. Thus, the Court finds her earning capacity is zero as of November 30, 2015, and that she is entitled to two-thirds of her average weekly wage as temporary partial disability, or $404.12 per week, from that date forward.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Love shall receive medical benefits from Delta for treatment of her right shoulder injury of July 17, 2015, as recommended by the authorized treating physician, Dr. Greg Wolf.

2. Based upon the wage statement, Ms. Love's compensation rate for temporary

partial disability is $404.12. Ms. Love is entitled to temporary partial disability benefits for the period of November 30, 2015, to July 7, 2016, a period of thirty-one weeks and three days, or $12,697.45. Payment shall continue at the rate of $404.12 per week until a physician releases Ms. Love to return to work or places her at maximum medical improvement. Counsel is entitled to a reasonable fee not to exceed twenty percent of the amount of temporary benefits awarded.

3. This matter is set for an Initial (Status) Hearing on October 19, 2016, at 10:00 a.m. Central time.

**ENTERED this the 4ᵗʰ day of August, 2016.**

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

Status Hearing:

A Status Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call 731-422-5263 or toll-free at 855-543-5038 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

11

# APPENDIX

Exhibits:
1. Medical records of Dr. Greg Wolf;
2. Wage Statement;
3. Previously filed, and withdrawn, Petitions for Benefit Determination;
4. Delta's Report of Injury or Illness;
5. Intake Form from Dr. Wolf's office dated August 11, 2015;
6. Correspondence from Delta's counsel to Dr. Wolf dated October 5, 2015, regarding causation;
7. Correspondence from Delta's counsel to Dr. Sickle dated May 31, 2016, regarding causation;
8. Medical Records of Dr. Louis Murphy; and
9. E-mail from Delta's counsel to Ms. Love's former counsel re: Ms. Love's revocation of medical authorization.


Technical record:
1. Petition for Benefit Determination;
2. Dispute Certification Notice; and
3. Request for Expedited Hearing with supporting affidavit.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 4th day of August, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| James Krenis, Esq. Employee's Counsel | | | X | James.krenislaw@outlook.com; Leslie.krenislaw@outlook.com |
| Art Crews, Esq. Employer's Counsel | | | X | crewsa@waldrophall.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

13